UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICK STROTHER,

    Plaintiff,

v.                                        Case No:   8:16-cv-486-T-DNF

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____

## **OPINION AND ORDER**

Plaintiff, Rick Strother, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B. Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed applications for a period of disability, DIB, and SSI on March 7, 2012, alleging a disability onset date of August 31, 2009. (Tr. 291-99). Plaintiff's applications were denied initially on May 3, 2012, and upon reconsideration on August 22, 2012. (Tr. 213-16, 217-20, 226-34, 235-43). Plaintiff requested a hearing and, on November 18, 2013, an administrative hearing was held before Administrative Law Judge William M. Zellman ("the ALJ"). (Tr. 124-66). On February 10, 2014, the ALJ entered a decision finding that Plaintiff was not under a disability from August 31, 2009, through the date of the decision. (Tr. 99-112). Plaintiff filed a request for review which the Appeals Council denied on January 15, 2016. (Tr. 30-36). Plaintiff initiated this action by filing a Complaint (Doc. 1) on February 29, 2016. The case is now ripe for review pursuant to 42 U.S.C. § 405(g).

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff has engaged in substantial gainful activity since August 31, 2009, the alleged onset date. (Tr. 101). The ALJ explained that Plaintiff had not engaged in substantial gainful activity from the alleged onset date to 2011 or following 2011 and, thus, he continued with the sequential evaluation. (Tr. 101). At step two, the ALJ found that Plaintiff had the following severe impairments: bipolar disorder,

attention deficit hyperactivity disorder, and narcissistic traits. (Tr. 102). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 102).

Before proceeding to step four, the ALJ formulated Plaintiff's residual functional capacity ("RFC") as follows: "The claimant's ability to meet the physical demands of work is subject to no significant limitations. However, relative to his ability to meet the basic mental demands of work, he is limited to unskilled jobs that involve no more than occasional decision-making, occasional changes in the work setting, or occasional interaction with others." (Tr. 104). At step four, the ALJ found that Plaintiff was unable to perform his past relevant work as a restaurant host and theme park attendant. (Tr. 106).

At step five, the ALJ relied on the testimony of a vocational expert to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (Tr. 107). Specifically, the ALJ found that Plaintiff can perform the requirements of such jobs as stock clerk, laundry worker, and industrial cleaner. (Tr. 107). The ALJ concluded that Plaintiff had not been under a disability since August 31, 2009, the alleged onset date, through the date of the decision, February 10, 2014. (Tr. 107).

## II. Analysis

Plaintiff raises four issues on appeal: (1) whether the ALJ erred by improperly considering Plaintiff's work history and receipt of unemployment benefits; (2) whether the ALJ erred by improperly evaluating the opinion of Dr. Pushkash; (3) whether the ALJ erred by failing to properly perform a Psychiatric Review Technique; and (4) whether the ALJ erred by failing to

resolve inconsistencies between the testimony of the vocational expert and the Dictionary of Occupational Titles pursuant to SSR 00-04p. The Court will address each issue in turn.

### 1) Whether the ALJ erred by improperly considering Plaintiff's work history and receipt of unemployment benefits.

Plaintiff argues that the ALJ erred by failing to consider the evidence of Plaintiff's erratic work behavior and receipt of unemployment benefits as evidence supporting Plaintiff's claim for disability benefits. (Doc. 21 p. 6). Plaintiff contends that the fact that Plaintiff received unemployment benefits does not mean he may not also receive disability benefits and the fact that the ALJ consider this evidence may suggest that the ALJ abused his discretion by discriminating against Plaintiff. (Doc. 21 p. 6). Further, Plaintiff argues that the ALJ failed to consider a critical piece of evidence, i.e. the fact that he has had over 100 jobs since 1998. (Doc. 21 p. 6). Plaintiff contends that the ALJ's finding that Plaintiff performed work at the substantial gainful activity level in 2011, earning over $14,000, misleadingly suggests this income comes from a single job which ended only because of a layoff. (Doc. 21 p. 7). Plaintiff notes that the $14,000 earned in 2011 came from five different jobs. (Doc. 21 p. 7). Finally, Plaintiff contends that the ALJ's reliance on this fact is inconsistent with the ALJ's own finding that Plaintiff is unable to perform past relevant work. (Doc. 21 p. 7).

Defendant argues that the ALJ properly considered Plaintiff's employment history and receipt of unemployment benefits, along with other relevant evidence, in assessing Plaintiff's subjective complaints. (Doc. 26 p. 7).

The Court begins with Plaintiff's arguments concerning the ALJ's treatment of Plaintiff receiving unemployment benefits. While the receipt of unemployment benefits, standing alone, does not automatically disqualify a claimant from consideration of Social Security benefits, an ALJ may consider a claimant's receipt of unemployment benefits in making a credibility

determination. *See Boyd v. Astrue*, 2011 WL 1259795, at *6 (M.D. Fla. Mar. 31, 2011). Here, the ALJ considered Plaintiff's receipt of unemployment benefits as just one factor in support of the ALJ's finding that Plaintiff was not entirely credible. In addition, Plaintiff considered Plaintiff's work history, the fact that his records showed minimal and conservative treatment with a history of non-compliance, and the opinions of physicians. The ALJ did not improperly place dispositive weight to the fact that Plaintiff received unemployment benefits but properly considered the fact pursuant to the regulations. *See* 20 C.F.R. § 404.1529(c)(3)(vii) (providing that the ALJ may consider "[o]ther factors concerning [a claimant's] functional limitations and restrictions due to pain or other symptoms). Contrary to Plaintiff's argument, there is no evidence the ALJ improperly "discriminated" against Plaintiff in considering his receipt of unemployment benefit.

Likewise, the Court finds no error in the ALJ's treatment of Plaintiff's job history. The record shows that Plaintiff engaged in significant, ongoing work activity after his alleged disability onset date, showing that his impairments were not as limiting as alleged. (Tr. 104-05, 133-35, 138, 326-27, 453). *See* 20 C.F.R. §§ 404.1571, 416.971 (providing that "[t]he work . . . that you have done during any period in which you believe you are disabled may show that you are able to work at the substantial gainful level). The ALJ noted that in 2011--after Plaintiff's alleged disability onset date--Plaintiff performed work at the level of substantial gainful activity, earning over $14,000. (Tr. 101, 105, 138, 327). The ALJ noted that Plaintiff testified that he stopped working as a construction helper because of a layoff due to a workforce reduction, rather than due to a disabling condition. (Tr. 105, 138-40). The ALJ noted that at the time of hearing, Plaintiff was working 30 hours per week as a dishwasher and that he limited his hours to avoid going over Social Security limits. (Tr. 105, 132-33, 135-36). The ALJ also noted that Plaintiff testified that he believed he could perform other work, such as janitorial or security jobs. (Tr. 10). Contrary to

Plaintiff's argument, the ALJ did not err by improperly considering Plaintiff's work history, but properly considered Plaintiff's testimony from the administrative hearing. While the ALJ did not specifically note that Plaintiff had over 100 jobs since 1998, the ALJ did acknowledge that "[t]he claimant has had many previous jobs, most of which have been short-lived." (Tr. 105). In essence, Plaintiff is requesting the Court to reweigh the evidence as to Plaintiff's work history. The Court declines to do so. The ALJ's treatment of Plaintiff's work history and receipt of unemployment benefits is supported by substantial evidence.

**2) Whether the ALJ erred by improperly evaluating the opinion of Dr. Pushkash.**

Plaintiff argues that the ALJ erred by according little weight to the opinion of consultative examiner Mark Pushkash, Ph.D. (Doc. 21 p. 7-8). Plaintiff contends that while the ALJ noted that Plaintiff could perform his serial sevens and could recall seven digits forward, the ALJ failed to note that Plaintiff could only recall three in reverse. (Doc. 21 p. 8). In addition, Plaintiff argues that contrary to the ALJ's finding, Dr. Pushkash's opinion is not internally inconsistent. (Doc. 21 p. 8). Finally, Plaintiff contends that Dr. Pushkash's opinion is consistent with his continued loss of employment. (Doc. 21 p. 8). In response, Defendant argues that substantial evidence supports the ALJ's finding that Dr. Pushkash's opinion was entitled to little weight. (Doc. 26 p. 14).

The record shows that in April 2012, Dr. Pushkash opined Plaintiff had the intellectual capability to comprehend, recall, and follow-through on instructions, but his ability to concentrate and persist on tasks was severely impaired due to untreated ADHD and hypomania (Tr. 412). Dr. Pushkash also opined Plaintiff did not cope well with frustration and would have substantial difficulties in social functioning because he was highly distractible (Tr. 412).

In his decision, after reviewing Dr. Pushkash's opinion, the ALJ explained that

> [w]hile this assessment was considered as the opinion of an examining medical source, it has been given little weight because it is internally

> inconsistent. For example, while Dr. Pushkash noted *severe* limitations in concentration, his examination revealed that the claimant was able to recall seven digits forward and perform serial 7's to 50 without error. Further, the opinion is inconsistent with the claimant's continued work activity and wide range of activities of daily living, including shopping in stores, performing volunteer work, and living with friends. Lastly this opinion was given little weight because the claimant was receiving no treatment at the time.

(Tr. 106).

Here, the Court finds that the ALJ did not commit reversible error by according little weight to Dr. Pushkash's opinion. The record shows that Dr. Pushkash examined Plaintiff a single time and, thus, his opinion was not entitled to any special deference. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (providing that the opinions of one-time examiners are not entitled to special deference because they are not from treating physicians). While the opinion was not entitled to any special deference, the ALJ examined Dr. Pushkash's opinion at length and explained his reasoning for according the opinion little weight. Contrary to Plaintiff's argument, the fact that Plaintiff could only recall three digits in reverse does not undermine the ALJ's finding that Dr. Pushkash's opinion that Plaintiff had severe limitations in concentration was undermined by his ability to do serial sevens and his ability to recall seven digits forward. (Tr. 106, 411). In the same way, it was not erroneous for the ALJ to consider Plaintiff's continued work, wide range of daily activities, and the fact that Plaintiff was examined while he was not being treated for his conditions in according little weight to the opinion. Plaintiff has failed to show that the ALJ erred in his consideration of Dr. Pushkash's opinion. Accordingly, the Court will not disturb the ALJ's finding.

### 3) Whether the ALJ erred by failing to properly perform a Psychiatric Review Technique.

Plaintiff argues that the ALJ erred by failing properly complete a Psychiatric Review Technique Form ("PRTF") and, specifically, to provide the rating for Plaintiff's limitations in the area of social functioning. (Doc. 21 p. 9). Plaintiff argues that the ALJ attempted to improperly circumvent the requirement to complete a PRTF by adopting the opinions of non-examining state agency medical doctors. (Doc. 21 p. 10).

Defendant responds that the ALJ properly incorporated the PRTF mode of analysis into his decision. (Doc. 26 p. 5). Defendant contends that the ALJ specifically addressed Plaintiff's limitations in the area of social functioning, contrary to Plaintiff's argument. (Doc. 26 p. 7).

In *Moore v. Barnhart*, the Eleventh Circuit held that "where a claimant has presented a colorable claim of mental impairment, the social security regulations require the ALJ to complete a PRTF and append it to the decision, or incorporate its mode of analysis into his findings and conclusions." *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th 2005). This technique requires separate evaluations on a four-point scale of how the individual's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Id.* (quoting 20 C.F.R. § 404.1520a(c)(3–4)). The ALJ is required to complete a PRTF and append it to the decision or incorporate the results of this technique into the findings and conclusions of his decision. *Id.* at 1214. Failure to do so requires remand. *Id.*

In this case, the Court finds the ALJ committed no error in not completing a PRTF. While the ALJ did accord great weight to the PRTFs of the state agency medical consultants Roger Rattan, Ph.D., and Craig Childs, Ph.D., the ALJ did not improperly attempt to circumvent the requirement to complete a PRTF by merely adopting Drs. Rattan and Child's findings. Drs. Rattan

and Child opined that Plaintiff had only mild difficulties in his activities of daily living and social functioning, moderate limitations in maintaining concentration, persistence, or pace, and no episodes of decompensation. (Tr. 102, 172, 181, 194, 205). Contrary to Plaintiff's claim, the ALJ directly addressed Plaintiff's limitations in the area of social functioning, specifically stating "[i]n social functioning, the claimant has moderate difficulties." (Tr. 103). Thus, the ALJ found Plaintiff to be even more limited in social functioning than opined by Drs. Rattan and Child, again, contrary to Plaintiff's claim that the ALJ merely adopted their opinions without completing his own analysis. The ALJ explained that

> [a]lthough the claimant testified that he does not like to be ordered what to do and the brief of the claimant's representative alleged marked social limitations (See Exhibit 11E), the claimant's functional report showed that he lives with friends, shops in stores, and performs volunteer work. (Exhibit 4E). These activities demonstrate an ability to be around others.

(Tr. 104). Plaintiff's arguments lack merit and the Court affirms the ALJ properly completed a PRTF.

**4) Whether the ALJ erred by failing to resolve inconsistencies between the testimony of the vocational expert and the Dictionary of Occupational Titles pursuant to SSR 00-04p.**

Plaintiff argues that the testimony of the vocational expert provided at the administrative hearing is in conflict with the Dictionary of Occupational Titles ("DOT"). (Doc. 21 p. 11). As an example, Plaintiff notes that there are four different job codes which contain the term "laundry worker" in the DOT, but the vocational expert only testified that a hypothetical person with Plaintiff's RFC could perform the work of "laundry worker" without further clarification or citation to the DOT. (Doc. 21 p. 12). In addition, Plaintiff argues that the ALJ erred by failing to resolve the inconsistency in the vocational expert's testimony concerning the job of "stock clerk." (Doc. 21 p. 12). Specifically, at the hearing, the vocational expert testified that "stock clerk" was

a job requiring Specific Vocational Preparation (SVP) of 4, but further testified that "based on my experience, there are jobs that are learned in 30 days or less for that so I'm just correcting the DOT." (Tr. 160). In response, Defendant argues that the ALJ properly relied on the vocational expert's testimony to find that Plaintiff could perform other work. (Doc. 26 p. 17).

As set forth above, at step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004).

In this case, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 107). Therefore, the burden shifted to the ALJ to prove that Plaintiff was capable of performing other work available in the national economy. To help him in this inquiry, the ALJ obtained testimony from a vocational expert. (Tr. 159-60). The ALJ asked the vocational expert whether a hypothetical individual with Plaintiff's vocational factors and RFC could perform other work. (Tr. 159-60). The vocational expert testified that the hypothetical person would be able to perform the jobs of stock clerk, laundry worker, and industrial cleaner, which existed in significant numbers. (Tr. 159-60). At the hearing, the ALJ noted that the job of stock clerk was semiskilled and that he had limited the hypothetical to unskilled. (Tr. 160). The vocational expert testified that based on

his experience, there were stock clerk jobs that were learned in 30 days or less, despite the DOT's classification of that occupation as semiskilled. (Tr. 160).

In his decision, the ALJ relied on the vocational expert's testimony at step five to find that there was other work available in significant numbers in the national economy Plaintiff could perform. (Tr. 107). The ALJ specifically found that "[p]ursuant to SSR 00-04p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 107).

The purpose of SSR 00–4p is to clarify the standards for use of a vocational expert at a hearing, and requires administrative law judges to "identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT) ..." SSR 00–4p.

> When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00–4p. The Court notes that "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. [citation omitted]. Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference ..." *Klawinski v. Comm'r of Soc. Sec.,* 391 F. App'x 772, 775 (11th Cir. 2010).

Here, the Court finds that the ALJ's step five finding is supported by substantial evidence. Despite Plaintiff's argument that the ALJ violated SSR 00-04p by failing to resolve conflicts, the transcript of the administrative proceeding shows that the ALJ acknowledged a conflict between the vocational expert's testimony and the DOT. The ALJ noted that he limited his hypothetical to unskilled and stock clerk was listed in the DOT as semiskilled with SVP of 4. The vocational expert testified that based on his experience, there are stock clerk jobs that are learned in 30 days or less, i.e., unskilled work. (Tr. 160). Thus, the ALJ acknowledged and resolved an apparent conflict.

To the extent that Plaintiff is arguing that the ALJ erred by failing to cite to specific DOT codes at step five, the Court rejects this argument. As Defendant notes, the DOT is not the sole source of job information, and a vocational expert may identify examples of jobs based on his/her experience regarding work in the nation. 20 C.F.R. § 404.1566(d),(e); *Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir.1999) (noting that "the DOT is not the sole source of admissible information concerning jobs."). Plaintiff has failed to show that he was prejudiced by the ALJ's failure to cite to specific DOT code numbers. For these reasons, the Court finds that the ALJ did not err by failing to resolve any conflict between the vocational expert's testimony and the DOT.

**III.    Conclusion**

The decision of the Commissioner is **AFFIRMED**. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on June 28, 2017.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties